**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

---

LAW SOLUTIONS CHICAGO LLC          CIVIL ACTION NO. 18-216
d/b/a UPRIGHT LAW LLC
　　　　Appellant

VERSUS          JUDGE ELIZABETH ERNY FOOTE

UNITED STATES TRUSTEE          MAGISTRATE JUDGE MARK HORNSBY
　　　　Appellee

---

## <u>MEMORANDUM RULING</u>

Before the Court is an appeal from an order of the United States Bankruptcy Court, Western District of Louisiana. Appellant, Law Solutions Chicago, LLC, doing business as UpRight Law, LLC ("UpRight"), appeals from the Bankruptcy Court's Order [Bankr. Doc. 41][1] ("the Order") on the United States Trustee's Motion to Disgorge Fees and For Other Appropriate Relief in the underlying bankruptcy matter, <u>In re Lillie Mae Banks</u>, Case No. 17-10456 ("the Banks case"). For the reasons announced herein, the Order of the Bankruptcy Court is **AFFIRMED**.

## **BACKGROUND INFORMATION**

UpRight characterizes itself as a "national consumer bankruptcy law firm, headquartered in Chicago, Illinois, with a practice model that differs from some law firms." Record Document 32, p. 30. Specifically, its Chicago office addresses the firm's

---

[1] "Bankr. Doc." refers to filings in the Bankruptcy Court's docket. "Record Document" refers to filings in this Court's docket.

administrative functions, advertising, and provides assistance to the "local partners"– the approximately 400 attorneys nationwide who "have a relationship with the firm but also maintain a separate practice." Id. The local partners do not have any managerial authority in the firm, id. at 31, but receive a percentage of the fees that a client pays to UpRight if the partner provides services for that client, Bankr. Doc. 40, pp. 156-57. When a prospective client reaches out to UpRight, the Chicago-based staff enters the client's information into a system, a fee is generated, and a partner attorney is assigned to the case. See id. at 190, 213-14; Record Document 32, pp. 33-34.

In the underlying bankruptcy case, the debtor, Lillie Mae Banks ("Banks"), discovered UpRight through the internet and called UpRight at a number provided on its website. Bankr. Doc. 40, pp. 10-11. Though initially assigned an attorney not licensed to practice in the Western District of Louisiana, Banks was eventually represented by Andrea Augustus ("Augustus"), an attorney located in New Orleans who was formerly a local partner at UpRight. After a series of missteps by both UpRight and Augustus, the United States Trustee ("UST") filed a Motion to Disgorge Fees and For Other Appropriate Relief [Bankr. Doc. 16] in the Banks case. Generally, the UST's motion gave an account of the events that had taken place in the case, which all parties agree was "horribly screwed up," Record Documents 7, p. 19; 22-9, p. 199, and requested that the court disgorge all fees collected, issue a $5,000 civil penalty, and issue certain injunctive relief to prevent future abuse and neglect by UpRight. Bankr. Doc. 16. The Bankruptcy Court held a hearing on the motion, at which it heard testimony from Banks, attorney Augustus, and David Menditto,

the associate general counsel for litigation at UpRight. See Bankr. Doc. 40. On February 6, 2018, the Bankruptcy Court issued its Order [Bankr. Doc. 41], which imposed a 90-day suspension and additional requirements on UpRight, and is the subject of this appeal.[2]

The Bankruptcy Court's Order generally found that UpRight failed to adequately represent Banks in what should have been a simple bankruptcy case. For example, the court found that UpRight: (1) initially assigned Banks an attorney located in Tennessee and not licensed to practice in Louisiana; (2) later assigned Banks to attorney Augustus, who was located 350 miles from Banks, despite promising that she would be represented by a local attorney; (3) never sent Banks a retainer agreement signed by an attorney licensed to practice in Louisiana; (4) used a problematic retainer agreement with terms that violate Louisiana Rule of Professional Conduct 1.5 concerning fees and fee disputes; (5) made oral representations that contradicted the written retainer agreement; (6) made multiple misstatements or misrepresentations, and repeatedly broke promises made to Banks; and (6) failed to properly supervise Augustus over the entire course of UpRight's representation of Banks. Bankr. Doc. 41, pp. 3-25. The court also found Augustus at fault, as she: (1) consistently neglected to contact Banks; (2) delayed filing Banks' first bankruptcy petition; (3) negligently allowed the first bankruptcy case to be dismissed and remain dismissed; (4) falsely indicated that Banks had signed her second bankruptcy petition; and (5) allowed the

---

[2]On February 16, 2018, UpRight filed a notice of appeal of the Bankruptcy Court's Order. It also filed a motion to stay the Order pending appeal [Bankr. Doc. 53], which was denied by the Bankruptcy Court [Bankr. Doc. 71], and it filed an Emergency Motion to Stay Enforcement of the Order [Record Document 2] in this Court. This Court held a hearing and orally denied that motion. See Record Documents 26 & 27.

second bankruptcy to be dismissed by failing to file required documentation.[3] Id. at 9-28.

The court found professional negligence on the part of both Augustus and UpRight,

including multiple, continuous violations of the Louisiana Rules of Professional Conduct.[4]

The court further found that UpRight failed to comply with the Bankruptcy Code, 11 U.S.C.

§ 528, when Banks' retainer agreement was electronically signed by an attorney not

licensed to practice in Louisiana and who never saw or physically signed the agreement.

Id. at 33.

The court ruled that disgorgement was appropriate under 11 U.S.C. § 526(c)(1),

specifically because UpRight failed to provide Banks with a properly executed written

contract between them, in violation of 11 U.S.C. §§ 528(a)(1) and (2). Id. at 34-35. In

addition to disgorgement, the court found relief under 11 U.S.C. §§ 526(c)(5) and 105

appropriate. Section 526(c)(5) provides that if a court finds an intentional violation of

section 526, or a clear and consistent pattern or practice of violating section 526, it may

enjoin the violation of that section or impose a civil penalty. The court found that

"UpRight's continued failure to provide Banks with bankruptcy services after numerous

requests for help amount[ed] to an intentional violation of 11 U.S.C. § 526(a)(1)," and also

noted that while UpRight "promised to provide Banks an array of bankruptcy services," it

---

[3]The UST moved to vacate the dismissal of the second bankruptcy, which was granted. Bankr. Docs. 41, p. 28; 9, p. 1.

[4]The court found that UpRight violated the following Rules of Professional Conduct: (1) 1.1 Competence; (2) 1.3 Diligence; (3) 1.4 Communication; (4) 1.5 Fees; and (5) 5.1 Responsibility of Partners, Managers, and Supervisory Lawyers. Bankr. Doc. 41, pp. 29-32.

"repeatedly failed to provide those services or misrepresented those services." Id. at 35. Accordingly, the court imposed the sanctions agreed upon by the UST and UpRight: disgorgement of all fees paid by Banks, refunding the $30 Banks paid for credit counseling, and payment of a $5,000 civil penalty to the United States Treasury. Id. at 36. Additionally, the court suspended Augustus from practicing in the United States Bankruptcy Court for the Western District of Louisiana for 90 days and ordered that her electronic filing privileges be suspended until she completes fifteen hours of bankruptcy specific continuing legal education and petitions the court for reinstatement of her privileges. Id. at 36-37. UpRight does not appeal those sanctions or requirements. The court imposed the following additional measures, which are the subject of this appeal:

> (1) UpRight was suspended from filing any bankruptcy cases in the Western District of Louisiana for a period of 90 days. The suspension included any of UpRight's partner attorneys filing on UpRight's behalf. However, partner attorneys who maintained separate legal practices could continue to file bankruptcy cases for those clients not contracted with or represented by UpRight, and were also allowed to participate in any bankruptcy cases filed by UpRight prior to entry of the Order. Id.

> (2) UpRight "may not accept any payment from any Western District of Louisiana residents who have not had a thorough and adequate consultation with an attorney that is licensed to practice in this District and is able to represent them." Id. at 37.

> (3) UpRight's "contracts or retainer agreements must conform to Louisiana Rule of Professional Conduct 1.5(f)(5)" and all contracts between UpRight and residents of the Western District of Louisiana must contain a specified paragraph of text taken from that rule. Id. at 37-38.

> (4) Attorneys acting on behalf of UpRight are prohibited from filing any document that is electronically signed by a client (i.e., using the /s/ notation). All documents filed by UpRight and its partner attorneys in this district which contain a client signature must contain a scanned original

signature. This applies to all bankruptcy cases filed by UpRight and its affiliates in the Western District of Louisiana. Id. at 38.

(5) "[E]very employment contract for debt relief services between UpRight Law LLC and its clients must contain the original 'wet' signatures of both the client and the UpRight Law LLC attorney licensed in the Western District of Louisiana. The attorney who executes that contract shall be designated as the attorney in charge of that case. Further, UpRight Law LLC and its affiliates may not accept a retainer from any client before an employment contract is executed. This order applies with respect to UpRight Law LLC and its affiliates and any of their prospective clients residing in or anticipating filing bankruptcy in the Western District of Louisiana." Id.

(6) Every attorney affiliated with UpRight and its affiliates who files a pleading within this district on behalf of UpRight or its affiliates must contact the clerk of court and update their CM/ECF account or create a duplicate account so that the docket in each case accurately reflects the attorney's firm name as UpRight Law LLC. Id. at 38-39.

UpRight additionally challenges the following statements made in the Order: "Any future retainer agreements between UpRight and its clients in the Western District of Louisiana must specifically include all services integral to a Chapter 7 filing. It also must conform to the Louisiana Rules of Professional Conduct." Id. at 8. Finally, to the extent they are construed as findings of fact, UpRight challenges the Bankruptcy Court's characterizations of it as a "referral service" and a "marketer of legal services." See id. at 19, 29, 35.

## JURISDICTION

This Court has jurisdiction to consider this appeal under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error, and issues of law

are reviewed de novo. <u>Placid Refining Company v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)</u>, 108 F.3d 609, 613 (5th Cir. 1997). In reviewing attorney discipline, whether a particular disciplinary action was appropriate is reviewed for abuse of discretion, while the determination of whether an attorney's actions were misconduct is reviewed de novo. <u>Id.</u>; <u>In re Moity</u>, 320 F. App'x 244, 247 (5th Cir. 2009) (citing <u>In re Sealed Appellant</u>, 194 F.3d 666, 670 (5th Cir. 1999)). "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." <u>In re Sealed Appellant</u>, 194 F.3d at 670.

## LAW AND ANALYSIS

UpRight argues that the Bankruptcy Court erred or abused its discretion in ordering the measures detailed above.

### A. Injunction-related Arguments

First, UpRight claims the 90-day suspension is an injunction subject to the requirements of Federal Rule of Civil Procedure 65(d). Record Document 32, pp. 47-48. The Court disagrees with this characterization. "Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do." <u>United States v. Nolen</u>, 472 F.3d 362, 371 (5th Cir. 2006). A court does not necessarily issue an "injunction" when it restricts an attorney's ability to practice within its district, or regulates that practice.

UpRight cites <u>Newby v. Enron Corp.</u>, 302 F.3d 295 (5th Cir. 2002), and <u>Federal Trade Commission v. Lanier Law, LLC</u>, 194 F. Supp. 3d 1238 (M.D. Fla. 2016), in support

of its argument, but those cases are easily distinguishable. In Newby, the court enjoined an attorney from filing any new Enron-related actions in state court without leave of the district court, 302 F.3d at 300-03, and in Lanier Law, the injunction included a bar on the defendants from practicing in a particular area of the law— the "loan modification/foreclosure defense area," 194 F. Supp. 3d at 1288. Unlike the case here, where a court implements a limited suspension of a law firm practicing before it, and only to the extent that law firm practices before it, the Newby and Lanier Law cases involved an exertion of authority over a party's ability to practice in *other* courts. The Court sees this as an important distinction, and one noted by at least one other court examining the same issue. See Allen v. Fitzgerald, No. 5:18-CV-00057, 2018 WL 3672746, at *4 (W.D. Va. Aug. 1, 2018). Accordingly, the Court finds that the suspension is not an "injunction," and UpRight's various arguments predicated on this fact are rejected.

Citing Wells Fargo Bank, N.A. v. Jones, 391 B.R. 577 (E.D. La. 2008), UpRight also argues that the Bankruptcy Court was required to engage in the traditional four-part analysis for imposing injunctive relief and, because it failed to do so, the Order must be reversed. Record Document 32, pp. 66-67. In Jones, the court cited the Fifth Circuit's general requirement that a party seeking a permanent injunction must meet a four-part test: "It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." Jones, 391 B.R. at 609 (quoting VRC LLC v. City of Dallas, 460 F.3d 607,

611 (5th Cir. 2006)). Jones involved a bankruptcy court's order imposing new accounting procedures on Wells Fargo, a creditor in the bankruptcy case. Finding that the bankruptcy court failed to consider the four-part test, the district court remanded the case for additional consideration. Id. at 610. Jones is easily distinguishable in that it did not involve a court regulating the conduct of attorneys practicing before it. Furthermore, it is a district court case that is not binding on this Court. Additionally, and as partially explained above, the Court considers neither the suspension nor the other contested measures to be traditional injunctions such that the four-part test applies. See Baum v. Blue Moon Ventures, LLC, 513 F.3d 181, 189 (5th Cir. 2008) (finding that traditional standards for injunctive relief do not apply to an injunction against a vexatious litigant).

UpRight similarly argues that the Bankruptcy Court was prohibited from issuing injunctive relief under 11 U.S.C. § 526(c)(5) without engaging in the traditional injunction analysis, including making a finding of irreparable harm. Record Document 32, pp. 68-69. UpRight does not cite Fifth Circuit precedent specific to § 526 on this point. Furthermore, the Court agrees with the UST that UpRight could have, but failed to, raise this issue in response to the UST's motion, which sought relief under § 526(c)(5). See Leverette v. Louisville Ladder Co., 183 F.3d 339, 342 (5th Cir. 1999). Accordingly, for the reasons outlined above, these arguments are rejected.

## B. Jurisdiction

Next, UpRight argues that the Bankruptcy Court lacked jurisdiction to enter the contested relief under Wells Fargo Bank, N.A. v. Stewart (In re Stewart), 647 F.3d 553 (5th

Cir. 2011). In that case, a creditor, Wells Fargo, filed a proof of claim in the debtor's bankruptcy case that was "rife with errors" and overstated its claim. In re Stewart, 647 F.3d at 555. The bankruptcy court found that Wells Fargo's mortgage claims exhibited "systematic errors" and that claims often go unchallenged, allowing them to evade review. Id. at 555–56. Perceiving this as a threat to the system, and in order to prevent errors from evading review, the court issued an injunction mandating that Wells Fargo audit every proof of claim it had filed in the Eastern District of Louisiana after April 13, 2007,[5] provide a loan history on every account and file that history with the appropriate court, and amend proofs of claim already on file to comply with the principles established in the Stewart case and in a prior ruling of the court. Id. at 556.

On appeal, the Fifth Circuit found that the bankruptcy court's injunction lacked "jurisdictional legs." Id. at 558. In doing so, it found that Stewart lacked Article III standing to support an injunction as there was no real threat she would suffer similar injury in the future. It noted that the case involved only a single debtor, and that the dispute was between the estate and the bank; it did not involve a class or claims by others. Stewart's objection to the bank's claim in her case was insufficient to serve as the jurisdictional basis for the relief controlling the contents of filings in other bankruptcy cases. Id. at 557.

UpRight argues that the Bankruptcy Court's Order, like the injunction in Stewart, went beyond the dimensions of the immediate case and is broader than necessary to

---

[5]April 13, 2007, was the date the bankruptcy court issued a prior opinion involving Wells Fargo and its accounting practices, and thus when it was put on notice that its accounting was inadequate. In re Stewart, 647 F.3d at 556 n.16.

protect Banks. It emphasizes that Banks has received a discharge and will not benefit from any of the contested relief. Thus, argues UpRight, the purpose of the Order was to police a range of cases beyond the Banks case, and pursuant to <u>Stewart</u>, the Bankruptcy Court lacked jurisdiction to issue such an Order. Record Document 32, pp. 51-53.

The UST argues that <u>Stewart</u> concerns a court's power to enjoin a creditor's conduct, and does not affect a court's authority over its bar. Record Document 37, p. 61. This Court agrees. The injunction in <u>Stewart</u> targeted the actions of Wells Fargo, a creditor, as opposed to attorneys practicing before the court. As previously noted, "Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do."[6] <u>Nolen</u>, 472 F.3d at 371. This Court has already determined that the contested relief is not properly classified as a traditional injunction, but instead stems from the Bankruptcy Court's authority over attorneys practicing before it.

This case is further distinguishable in that the debtor in <u>Stewart</u> had not asserted a likelihood of future injury, whereas here, the UST specifically requested injunctive relief to prevent other clients from suffering similar abuse and neglect as that suffered by Banks. Bankr. Doc. 16, p. 15. Therefore, that particular issue—future harm to *other* debtors—was before the court, and the issue was raised via a motion authorized by the Bankruptcy Code. <u>See</u> 11 U.S.C. § 526(c)(5). Thus, the Court finds UpRight's jurisdictional argument, and its reliance on <u>Stewart</u>, unavailing.

---

[6] And as noted by the UST, Congress acknowledged this authority in 11 U.S.C. § 526(d)(2)(B), which provides that no provision of §§ 526, 527, or 528 shall "be deemed to limit or curtail the authority or ability— of a Federal court to determine and enforce the qualifications for the practice of law before that court."

## C. Due Process

UpRight next argues that, with the exception of the requirement that no payment be accepted until a client has had a thorough and adequate consultation with an attorney licensed in this district and able to represent them, all of the contested relief was ordered without regard to its due process rights.[7] UpRight claims that it did not receive notice of the relief ordered until the Bankruptcy Court announced it was considering such relief sua sponte during the hearing on the UST's motion. Record Document 32, p. 54. Thus, it claims it was denied meaningful notice and the opportunity to be heard.

To the extent UpRight was subject to discipline, it was entitled to due process. In re Sealed Appellant, 194 F.3d at 670. However, with the exception of the 90-day suspension, the Court does not view the other contested measures as sanctions or discipline. The cases to which UpRight cites in support of its due process argument involve monetary sanctions, suspensions, and disbarments. See Chambers v. NASCO, Inc., 501 U.S. 32 (1991); In re Sealed Appellant, 194 F.3d 666; Crowe v. Smith, 151 F.3d 217 (5th Cir. 1998); Dailey v. Vought Aircraft Co., 141 F.3d 224 (5th Cir. 1998). They do not involve the kind of measures ordered by the Bankruptcy Court, which this Court sees as good-sense, prophylactic measures not intended to be punitive.

As to the suspension, the UST argues that UpRight was only entitled to "fair notice of the charge and an opportunity to be heard," which it received. Record Document 37, p.

---

[7]UpRight's challenge to the 90-day suspension is not moot. See Dailey v. Vought Aircraft Co., 141 F.3d 224, 228 (5th Cir. 1998) (noting that the possibility of adverse collateral consequences is sufficient to preclude mootness).

68 (quoting In re Grodner, 587 F. App'x 166, 170 (5th Cir. 2014)). The UST notes that

UpRight was given notice of its problematic conduct, as well as notice of possible sanctions

and other action by the court, in the UST's motion. UpRight was permitted to respond in

its opposition and at the hearing, at which it was given further notice that the Court might

issue a suspension. The UST argues that this was sufficient to satisfy due process, and

cites In re Nalls, 124 F. App'x 232 (5th Cir. 2005), and NASCO, Inc. v. Calcasieu Television

& Radio, Inc., 894 F.2d 696 (5th Cir. 1990), in support of its position.

In Nalls, an attorney challenged his 18-month suspension from practicing in the

Middle District of Louisiana. In re Nalls, 124 F. App'x 232, 233. In a per curiam opinion, the

Fifth Circuit explained:

> Given the well-established power of a court to suspend attorneys from
> practicing before it, insofar as Nalls is challenging the Order to Show Cause
> as insufficient notice, his argument still fails. Although the OSC in this case
> did not specifically mention the possibility of a suspension, nor did it specify
> any particular Rule of Professional Conduct that was breached, it did give
> reasonable notice. The OSC reads: "IT IS ORDERED that Mr. Clarence T.
> Nalls ... show cause ... why sanctions should not be imposed against him
> personally, under Fed. Rule Civ. P. 11, 28 U.S.C. § 1927, and the inherent
> powers of the court...." It goes on to detail the objectionable behavior
> potentially giving rise to sanctions.

Id. at 234. The Fifth Circuit clearly found this sufficient, as it upheld the suspension.

UpRight claims that, in Nalls, the attorney was specifically identified and apprised,

in detail, of the circumstances for which he may face sanctions, whereas here, the

individual local attorneys were sanctioned without notice and even without having been

named in the Order. Record Document 32, pp. 57-58. UpRight's attempt to assert a due

process violation on the part of the local attorneys is unavailing because the 90-day

suspension was a sanction against UpRight, not the local attorneys. The Order states that the suspension was appropriate due to *UpRight's* negligence and *UpRight's* violations of Louisiana's professionalism rules. Bankr. Doc. 41, pp. 36-37. It clarifies that "partner attorneys who maintain separate legal practices may continue to file bankruptcy cases for those clients not contracted with or represented by UpRight" and "may also participate in any bankruptcy cases filed by UpRight prior to the entry" of the Order. Id. at 37. Thus, it is clear that the suspension was aimed at UpRight, not the individual partner attorneys practicing in the Western District.[8]

In NASCO, the Fifth Circuit upheld the disbarment and suspension of attorneys who were only given notice of possible monetary sanctions before their discipline hearing, but were then notified after the hearing that they might face non-monetary sanctions, including suspension and disbarment, and were given the opportunity to file post-trial briefs. NASCO, 894 F.2d 696. UpRight argues that NASCO is distinguishable because the attorneys in that case were allowed to file post-hearing briefs. This may be true, however, the NASCO court noted that the attorneys in that case were not allowed to argue whether their conduct subjected them to disbarment or suspension at the hearing. Id. at 707. Here, UpRight was notified at the hearing that the Bankruptcy Court was considering a suspension. The court stated, "So what I need for you to do is tell me what went wrong, why it went wrong . . . and what UpRight's going to do to make sure it never happens again, because if I'm not

---

[8]It is difficult to imagine a situation in which a suspension of UpRight would not have some incidental effect on its local partners, but it is illogical that UpRight might be able to use its partner attorneys as a shield from all suspensions.

convinced of that, UpRight won't be practicing in the Western District of Louisiana."[9] Bankr. Doc. 40, p. 191. Thus, UpRight was explicitly given the opportunity to argue against suspension as a possible sanction at the hearing.

Ultimately, the Court would find that UpRight's due process rights were not violated by the Order. UpRight was provided detailed notice of the allegations forming the basis of the contested relief in the UST's Motion to Disgorge. That motion alleged violations of 11 U.S.C. §§ 528(a) and 526(a),[10] and requested relief "to prevent other clients from suffering similar abuse and neglect" as that suffered by Banks. Bankr. Doc. 16, p. 15. And while the motion requested specific relief, it did not limit its request to that relief. Instead, the motion went on to reference the Bankruptcy Court's additional, inherent authority to discipline attorneys, as well as 11 U.S.C. § 105. The UST's motion argued that the Bankruptcy Court could issue "any of the relief requested above, and any other relief it sees fit," and requested disgorgement along with "such other relief that [the Bankruptcy Court] finds appropriate to deter repetition of such conduct by Debtor's Attorneys." Id. at 15-16.

UpRight was given the opportunity to respond to the UST's motion in writing. See Bankr. Doc. 28. In its opposition, UpRight stated that it had already disgorged its attorney's

---

[9] The Bankruptcy Court also stated, "So you tell me why this case got so screwed up and tell me what you're going to do to fix it so that you can come back and file cases before me again." Bankr. Doc. 40, p. 200. Additionally, later in the hearing, when Mr. Menditto mentioned that UpRight might be willing to refile another bankruptcy case for Banks at no charge, the court responded: "That presupposes you are in a position to effect that work after my opinion, so I'm not going to go there at this point in time." Id. at 242.

[10] Section 526(c)(5) authorizes a court to enjoin violations of § 526 and to impose civil penalties.

fees and filing fee to Banks, and had offered to pay the $5,000 civil penalty, but objected to the UST's motion "to the extent it seeks more relief than what the Respondents have already provided and have offered to provide." Id. at 3-4. The opposition acknowledges both the specific relief suggested by the UST, and also the UST's request that the court order other appropriate relief to deter repetition of the problematic conduct. Id. at 6. The opposition later argues that relief pursuant to the court's inherent authority is not warranted. Id. at 20-22. This section argues that UpRight's practices are in compliance with the Louisiana Rules of Professional Conduct and that there "is no ongoing conduct on the part of UpRight Law . . . that needs to be coerced (either to promote certain conduct or deter certain conduct)." Id. at 22. Thus, it is clear that UpRight was on notice of, and also argued against, the possibility of relief outside of that specifically requested by the UST.

The Bankruptcy Court then held a hearing at which UpRight presented witnesses and introduced exhibits. See Bankr. Docs. 31, 33. At the hearing, the Bankruptcy Court notified UpRight that it was considering revoking its practice privileges, and UpRight was given the opportunity to respond. In sum, the Court finds that UpRight was not denied due process in this matter.[11]

---

[11]As previously suggested, the Court agrees with the UST's characterization of the contested measures– that is, the Court views the measures as (1) a 90-day suspension, and (2) conditions with which UpRight must comply in order to practice in the Western District Bankruptcy Court. The Court views the conditions not as sanctions, but as modest remedial measures which were within the Bankruptcy Court's power to order. To the extent the conditions, and not just the 90-day suspension, could properly be classified as sanctions, the Court would find no due process violation regarding them.

## D. Bad Faith and Burden of Proof

Next, UpRight argues that the Bankruptcy Court erred when it ordered the contested relief without making a specific finding of bad faith based on clear and convincing evidence. Record Document 32, p. 59. UpRight notes the general rule that in order to impose sanctions under its inherent power, a court must make a specific finding of bad faith. See Crowe, 151 F.3d at 236. However, the Bankruptcy Court specifically stated that the suspension was ordered pursuant to Local Rule 83.2.10,[12] and was appropriate due to UpRight's negligence in representing Banks, its failure to adequately supervise Augustus, and its violations of the Louisiana Rules of Professional Conduct.[13] Bankr. Doc. 41, pp. 36-37. Local Rule 83.2.4 adopts the Rules of Professional Conduct of the Louisiana State Bar Association as the rules of this Court. Thus, it appears the Bankruptcy Court suspended UpRight under the local rules, and the Fifth Circuit has declined to find that a finding of bad faith is required for a court to exercise its authority under the local rules. See In re Goode, 821 F.3d 553, 559 (5th Cir. 2016) ("It is well settled that in order for a federal court to sanction an attorney under its inherent powers, it must make a specific finding that the

---

[12]UpRight argues that the Bankruptcy Court was not allowed to issue the suspension pursuant to Local Rule 83.2.10 because that rule authorizes suspensions of individual attorneys, and not law firms. Record Document 32, p. 63. The Court finds this argument unpersuasive. The Bankruptcy Court had broad discretion to interpret and apply its local rules, and nothing in the language of the rule prohibits the suspension of an entire firm. Bonner v. Adams (In re Adams), 734 F.2d 1094, 1102 (5th Cir. 1984).

[13]The Bankruptcy Court referred to the "Louisiana Code of Professional Responsibility," but this Court understands the Bankruptcy Court is actually referring to the Louisiana Rules of Professional Conduct. See Bankr. Doc. 41, p. 7 (referring to "Louisiana Code of Professional Responsibility, specifically Rule 1.5").

attorney acted in bad faith. But, this Circuit has never explicitly extended this requirement to sanctions imposed pursuant to a local rule, and we decline to do so here." (internal citation omitted)). Accordingly, the court was not required to make an explicit finding of bad faith. However, even if the Bankruptcy Court suspended UpRight pursuant to its inherent power, the Fifth Circuit has found that "[w]hen bad faith is patent from the record and specific findings are unnecessary to understand the misconduct giving rise to the sanction, the necessary finding of 'bad faith' may be inferred." In re Sealed Appellant, 194 F.3d at 671 (collecting cases). Here, the record supports the conclusion that the Bankruptcy Court found bad faith. See Blanco River, L.L.C. v. Green, 457 F. App'x 431, 439 (5th Cir. 2012). The court found that UpRight violated at least five Rules of Professional Conduct, made multiple misrepresentations, failed to follow through on promises made to Banks, and repeatedly failed to supervise Augustus. The record supports a finding of bad faith, and the Bankruptcy Court did not err or abuse its discretion in ordering the modest 90-day suspension.[14]

Additionally, UpRight argues that the court erred in ordering the suspension without making findings based on clear and convincing evidence. See Sealed Appellant 1 v. Sealed Appellee 1, 211 F.3d 252, 254 (5th Cir. 2000). However, the facts in this case are largely undisputed, and UpRight has acknowledged wrongdoing and that it made mistakes. See Bankr. Doc. 40, pp. 193, 188-215, 253. The Bankruptcy Court found multiple violations of

---

[14]Again, the Court does not consider the contested relief, other than the 90-day suspension, to constitute sanctions. Nonetheless, to the extent an argument is being made that the Bankruptcy Court was required to find bad faith before ordering that relief, the same analysis applies.

the Rules of Professional Conduct, as well as misrepresentations and missteps by UpRight. The Court finds the evidence sufficient to satisfy the clear and convincing standard.[15]

## E. Narrowly Tailored

The Fifth Circuit has stated that a "sanctioning court must use the least restrictive sanction necessary to deter the inappropriate behavior." In re First City Bancorporation of Texas Inc., 282 F.3d 864, 867 (5th Cir. 2002). Citing this language, UpRight argues that the Bankruptcy Court's Order was not narrowly tailored to achieve its purpose. Record Document 32, p. 65. This Court disagrees. First, the suspension was relatively short and was imposed due to UpRight's negligence in representing Banks, its failure to adequately supervise Augustus, and its violations of the Louisiana Rules of Professional Conduct. Additionally, each of the other contested measures was specifically aimed at some act that occurred during the Banks case. For example, the requirement that attorneys filing pleadings on behalf of UpRight update their CM/ECF accounts to reflect their affiliation with the firm was responsive to the fact that the docket in Banks' second bankruptcy case did not show that attorney Augustus was affiliated with UpRight. See Bankr. Docs. 41, p. 27; 40, pp. 107-08. And as further explained below, the other ordered measures similarly

_____

[15]UpRight also argues that the contested relief was required to be ordered based on clear and convincing evidence against each individual attorney subject to the relief. See Record Document 32, p. 64. For the various reasons discussed herein, this argument is rejected. First, the Court does not consider the contested measures, with the exception of the 90-day suspension, to be sanctions. Instead, the measures were intended to regulate the conduct of attorneys practicing before the Bankruptcy Court. The measures were aimed at *UpRight* and were responsive to *UpRight's* conduct in the Banks case. Again, it seems illogical to allow UpRight to escape the court's authority by using its business model as a shield.

correspond to the facts of the Banks case. Thus, the Court finds that the ordered measures were sufficiently tailored, and UpRight's challenge on this basis is rejected.

## F. Relief Under 11 U.S.C. § 526(c)(5)

UpRight argues that § 526(c)(5) only allows injunctive relief to cure a violation of the particular section of 526 found to have been violated. It claims that the Bankruptcy Court erred when it ordered relief that extended beyond the identified violation of § 526.

The Bankruptcy Court found that UpRight had intentionally violated § 526(a)(1), which prohibits a debt relief agency from failing "to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title." Bankr. Doc. 41, p. 35. It also found that UpRight had repeatedly failed to provide bankruptcy services or misrepresented those services. See 11 U.S.C. § 526(a)(3). Contrary to UpRight's argument, the contested measures are responsive to violations of § 526(a). For example, the Order requires that UpRight not accept payment from a Western District client until (1) the client has had a consultation with the attorney licenced to practice in this district who will represent them, and (2) there is a signed retainer agreement containing original signatures from the client and the attorney who will be in charge of the case. This is responsive to the Bankruptcy Court's finding that UpRight misrepresented and failed to perform services. Specifically, UpRight assured Banks that she would be assigned a local attorney, but she was instead assigned an attorney located in Tennessee who was not licensed to practice in the Western District. This mistake resulted from UpRight's procedures that enabled it to sign a retainer

agreement on a partner's behalf. See Bankr. Doc. 40, pp. 186-88, 213-14. Additionally, the thorough and adequate consultation requirement is responsive to the delays and lack of communication in the Banks case, which occurred despite UpRight's representations that her attorney would be in contact with her. Similarly, the requirement that UpRight's retainer agreement conform to Louisiana Rule of Professional Conduct 1.5(f)(5) and contain a paragraph of text taken from that rule is responsive to UpRight's misrepresentation that Banks would not be entitled to a refund. See Bankr. Doc. 41, p. 31. Finally, the requirements in the Order related to filing documents with a client's scanned original signature and maintaining an updated CM/ECF account reflecting an attorney's affiliation with UpRight are similarly responsive to findings by the Bankruptcy Court. First, the court found that Augustus filed a petition and bankruptcy schedules that were not reviewed or signed by Banks, and thus made a false representation to the court. Id. at 26. Second, the court found that the CM/ECF docket in Banks' second bankruptcy case did not reflect UpRight's involvement in the case. Id. at 27.

## G. Remaining Arguments

UpRight challenges the following language on page 8 of the Order: "Any future retainer agreements between UpRight and its clients in the Western District of Louisiana must specifically include all services integral to a Chapter 7 filing. It also must conform to the Louisiana Rules of Professional Conduct." Bankr. Doc. 41, p. 8. UpRight complains that the phrase "services integral to a Chapter 7 filing," is not clearly defined and violates Rule 65 specificity requirements. Record Document 32, p. 69. Additionally, it argues that the

Order's instruction that retainer agreements must conform to the Louisiana Rules of Professional Conduct is nothing more than an injunction to "obey the law," which violates due process. Id. at 77.

As an initial matter, it is not clear that the court intended its statements to constitute an order such that a violation of its terms could be grounds for contempt. The language appears in the Findings of Fact section of the opinion and is nearly 30 pages removed from the actual orders of the court. Nonetheless, the language regarding "services integral to a Chapter 7 filing" is not ambiguous when read in context. The Bankruptcy Court had just expressed frustration that Banks' retainer agreement allowed for "additional attorney fees for the negotiation, review, and execution of reaffirmation agreements with creditors." Bankr. Doc. 41, p. 7. The court stated that it does not allow such unbundling of legal services, and explained,

> In the Fifth Circuit, a debtor must reaffirm, redeem, or surrender all secured debts . . . . If a debtor mistakenly does not reaffirm or redeem collateral, a debtor can be forced to surrender that collateral. Therefore, this Court considers reaffirmation or redemption an integral part of representation in a Chapter 7 case.

Id. at 7-8 (internal citations omitted). It seems quite clear that the "services integral to a Chapter 7 filing" that the court was referring to are the reaffirmation and redemption of secured debts.

As to the statement that UpRight's retainer agreements must conform to the Louisiana Rules of Professional Conduct, the Bankruptcy Court had just found on the preceding page that some of the terms in UpRight's retainer agreement violate Rule 1.5

concerning fees. Additionally, the final portion of the Order specifies that the agreements must conform to Rule 1.5(f)(5). Thus, to the extent the challenged language is considered an order of the Bankruptcy Court, and when read in context, it was sufficiently tailored and does not violate UpRight's due process rights.

Finally, to the extent they are construed as findings of fact, UpRight challenges the Bankruptcy Court's characterizations of it as a "referral service" and a "marketer of legal services." See id. at 19, 29, 35. The Court agrees with both parties that the comments are dicta and were not intended to be findings of fact. However, even if these statements were findings of fact, they are not clearly erroneous. "A finding of fact is clearly erroneous when, although there is enough evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed." Cobrans Corp. v. Capt. Kirk's Marine Service Inc. (In re Cobrans Corp.), 247 F.3d 241 (5th Cir. 2001) (quoting Sequa Corp. v. Christopher (In re Christopher), 28 F.3d 512, 514 (5th Cir. 1994)). Here, the Bankruptcy Court noted that one UpRight employee told Banks to contact Augustus because "on our end everything – everything's completed," despite the fact that Banks' first bankruptcy had been dismissed. See Bankr. Doc. 41, p. 19. Additionally, there was evidence that UpRight repeatedly failed to supervise Augustus, even when her lack of diligence was brought to UpRight's attention. Based on the record in this matter, the Court is far from convinced that the Bankruptcy Court's characterization was improper.

## H. UpRight's Motion to Strike

UpRight moves to strike an exhibit attached to the UST's Appellee Brief, Record Document 37-1, along with all references to that document in the UST's brief. Record Document 39. The exhibit is identified by the UST as a copy of UpRight's current retainer agreement that UpRight submitted in a different bankruptcy appeal, <u>Allen, et al. v. Fitzgerald</u>, Case No. 7:18-cv-134-MFU (W.D. Va.). The UST attached the exhibit to demonstrate that, contrary to UpRight's representations, its current retainer does not notify clients of their rights to a refund if they meet with a local partner and decide not to proceed with their case. Record Document 37, p. 76. The UST requested that the Court take judicial notice of the document as a matter of public record. <u>Id.</u>

The Court did not rely on the exhibit or the UST's arguments regarding the exhibit in deciding the issues raised on appeal. Accordingly, UpRight's motion is **DENIED AS MOOT**. <u>See</u> <u>Palacios v. City of Crystal City, Tex.</u>, 634 F. App'x 399, 406 (5th Cir. 2015); <u>Holleman v. Scott</u>, 146 F.3d 867 (5th Cir. 1998).

## CONCLUSION

For the foregoing reasons, the Order of the Bankruptcy Court is **AFFIRMED**. In addition, UpRight's Motion to Strike [Record Document 39] is **DENIED AS MOOT**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 24th day of _____, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE